# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Plot USA, Inc., <br><br> Plaintiff <br><br> v. <br><br> Takeshi Hyakawa[1] and Yukari Hidaka, <br><br> Defendants | Case No.: 2:18-cv-00922-JAD-EJY <br><br> **Order Granting in Part Motion for Summary Judgment and Denying Motion for Default Judgment** <br><br> [ECF Nos. 65, 68] |

Plaintiff Plot USA, Inc. seeks to end this three-year-old case against two of its former employees, Yukari Hidaka and Takeshi Hyakawa, which arose from the employees' alleged misconduct.[2] It moves for summary judgment against Hyakawa on four of its claims, based on Hyakawa's failure to respond to Plot USA's requests for admissions,[3] and for default judgment against Hidaka after the Clerk of Court entered default against her in 2019.[4] While I grant summary judgment as to Hyakawa's liability for Plot USA's claims for breach of contract and interference with a prospective economic advantage, I deny the remainder of its motion because it fails to present sufficient evidence that entitles it to summary judgment on damages or its remaining claims. And because Plot USA claims that the defendants are jointly and severally liable for any damages, I deny its motion for default judgement against Hidaka as premature.

---

[1] "Hyakawa" is also spelled "Hayakawa" in various documents in the docket.
[2] ECF No. 40 (amended complaint).
[3] ECF No. 65 (motion for summary judgment).
[4] ECF Nos. 68 (motion for default judgment), 63 (Clerk's entry of default).

**Background**

Plot USA sells motorcycles and related merchandise and equipment throughout the United States.[5] Over a decade ago, it hired Hyakawa as the Vice President and Director of its United States operations[6] and Hidaka as an accountant.[7] When they were hired, the defendants signed "standards of conduct" forms that prohibited them from falsifying or making material omissions to Plot USA or misusing, destroying, or damaging any of Plot USA's property and records.[8] Plot USA alleges that during Hyakawa and Hidaka's time with the corporation, they intentionally destroyed Plot USA's data and physical records.[9] It adds that the two sold or misappropriated its merchandise, equipment, and inventory without documentation and for their own personal gain.[10] So it fired them both.[11]

After firing Hyakawa and Hidaka, Plot USA sued them for the undocumented sales and misappropriation of its assets, asserting nine claims: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) unjust enrichment, (4) conversion, (5) breach of fiduciary duty, (6) trademark infringement, (7) intentional destruction of property, (8) intentional interference with contractual relations, and (9) intentional interference with prospective economic advantage.[12] While Hyakawa removed the case to this court and denied

---

[5] *See* ECF No. 65-1 at 9–10.
[6] ECF Nos. 40 at ¶ 8, 65-1 at 7.
[7] ECF No. 40 at ¶ 19.
[8] *Id.* at ¶¶ 9, 16, 20, 23.
[9] *Id.* at ¶¶ 26–30.
[10] *Id.* at ¶ 28.
[11] *Id.* at ¶¶ 18–25.
[12] ECF No. 40.

most of Plot USA's allegations,[13] he eventually stopped participating in the litigation, failing to respond to Plot USA's requests for admissions under Federal Rule of Civil Procedure 36(a).[14]

Plot USA now moves for summary judgment against Hyakawa based on the deemed-admitted admissions.[15] And unlike Hyakawa, Hidaka failed entirely to respond to Plot USA's complaint, even after being served by publication, and Plot USA obtained an entry of default against her.[16] It now moves for default judgment against Hidaka.[17] Neither defendant has opposed the motions pending against them.

## Discussion

### I. Plot USA's motion for summary judgment against Hyakawa [ECF No. 65]

Summary judgment is appropriate when the pleadings and admissible evidence "show [that] there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[18] When the party moving for summary judgment would bear the burden of proof at trial, "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[19] If it does, the burden shifts to the nonmoving party, who "must present significant probative evidence tending to support its claim or defense."[20] The

---

[13] ECF No. 8 (Hyakawa's answer to complaint).

[14] *See Conlon v. United States*, 474 F.3d 616, 619 (9th Cir. 2007) (holding that a failure to respond to requests for admissions within the time period provided will result in the matters set forth in the request for admissions to be admitted for purposes of summary judgment).

[15] ECF No. 65.

[16] ECF No. 63.

[17] ECF No. 68.

[18] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[19] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

[20] *Id.*

court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[21]

After answering Plot USA's complaint, Hyakawa stopped participating in this lawsuit. He failed to respond to Plot USA's requests for admissions or oppose Plot USA's motion for summary judgment. Hyakawa's absence has two consequences: (1) Plot USA's requests are deemed admitted and may form the basis for summary judgment and (2) the court can consider the facts in Plot USA's motion for summary judgment "undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that [Plot USA] is entitled to it."[22]

Based on Hyakawa's deemed-admitted facts, Plot USA moves for summary judgment on four of its claims against Hyakawa: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) intentional interference with contractual relations, and (4) intentional interference with economic advantage.[23] It adds that, if granted summary judgment on those claims, it will voluntarily dismiss its remaining claims.[24] I address each claim in turn.

### A. Breach of contract

To prevail on a breach-of-contract claim in Nevada, the plaintiff must establish: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach."[25] By failing to respond to Plot USA's requests for admission, Hyakawa is deemed to have admitted that he entered a valid employment contract with Plot USA that prohibited him

---

[21] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).
[22] Fed. R. Civ. P. 56(e)(2) & (3); *Heinemann*, 731 F.3d at 917.
[23] ECF No. 65 at 1.
[24] *Id.* at 2 n.1.
[25] *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013) (citation omitted).

from breaking the corporation's policies and procedures.[26] He violated those policies and breached the contract when he misused and destroyed the corporation's property.[27] These facts establish Hyawkwa's liability under the contract.

But while Plot USA provides a calculation of the amount it paid to recover its property and the sales it lost due to Hyakawa's actions, it doesn't explain which amounts are attributable to its contract claims. And as it notes, "it may only seek one monetary recovery."[28] So while Plot USA has demonstrated that it was injured by Hyakawa's actions in violation of his contract in some capacity, it hasn't shown that it's entitled to those damages on summary judgment. But on this record, no genuine issue of material fact exists as to Hyakawa's liability for Plot USA's contract claim, so I grant its motion as to liability only.

**B.     Breach of the implied covenant of good faith and fair dealing**

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution."[29] To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove (1) the existence of a contract between the parties, (2) that the defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract, and (3) that the plaintiff's justified

---

[26] ECF Nos. 65-1 at 7, 65-2 at ¶ 4 (Sakakibara declaration).

[27] ECF No. 65-1 at 7–8.

[28] *Id.* at 2 n.1.

[29] *A.C. Shaw Constr. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205); *see also Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007) ("It is well established that all contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair actions by one party that work to the disadvantage of the other.").

expectations under the contract were denied.[30] "Whether [a] party's actions fall outside the reasonable expectations of the dependent party is determined by the various factors and special circumstances that shape these expectations."[31] But a contractual breach of the implied covenant of good faith and fair dealing requires the plaintiff to show that the breaching party complied with the express terms of the contract and deliberately and intentionally contravened the intention and spirit of the contract.[32]

As noted above, Plot USA provides undisputed evidence that a valid employment contract existed between it and Hyakawa. But Plot USA's claim here fails for two reasons. First, while Hyakawa admits that he acted unfaithfully to the contract's purpose when he misused and destroyed Plot USA's data, this is also the basis of Plot USA's breach claim. So because I find that Hyakawa breached the contract when he misused and destroyed Plot USA's property, he cannot also have complied with its terms in a way that was unfaithful to the contract's purpose. This is also true of Plot USA's unjust enrichment claim.[33]

Second, even if Plot USA could recover under both theories, it's not entitled to summary judgment on this one because Hyakawa's admissions do not provide evidence of Plot USA's expectations under the contract. Although Hyakawa admits in request for admission (RFA) 30 that his actions "denied [Plot USA] its reasonable expectations under the" contract,[34] it hasn't

---

[30] *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton Hotels Corp. v. Butch Lewis Prod., Inc.*, 808 P.2d 919, 923 (Nev. 1991)).

[31] *Hilton Hotels Corp.*, 808 P.2d at 923–24.

[32] *Id.* at 923.

[33] *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) ("An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement.").

[34] ECF No. 65-1 at 9.

provided evidence of what those expectations were. Plot USA instead asks me to infer its expectations from Hyakawa's admission, but because all reasonable inferences must be drawn in Hyakawa's favor at this juncture, Plot USA has not met its burden to show that its justified expectations were denied. I therefore deny Plot USA's motion on its claim for breach of the implied covenant of good faith and fair dealing and order it to show cause why its claims for unjust enrichment and implied covenant of good faith and fair dealing should not be dismissed as duplicative of its breach-of-contract claim.

### C. Intentional interference with contractual relations

In Nevada, a claim for intentional interference with contractual relations requires proof of "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage."[35] Plot USA buttresses this claim by arguing that Hyakawa stole its property and took all of the proceeds when he sold the stolen goods. Even considering the facts that Plot USA presents as uncontroverted, it has not met its burden to show that it had valid and existing contracts with which Hyakawa interfered. It exclusively relies on three requests for admissions as the sole evidence to support its motion:

> **REQUEST NO. 42**: Admit that you were aware that contracts existed between [Plot USA] and third parties and that you intentionally interfered with those customer relationships, including but not limited to, usurping sales belonging to [Plot USA] and inducing third parties not to enter into contractual relationships with [Plot USA].
>
> **REQUEST NO. 43**: Admit that you were aware that prospective contractual relationships existed between [Plot USA] and third parties who would have purchased merchandise and products from

---

[35] *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003) (quoting *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989)).

> [Plot USA] had you not intentionally obstructed [Plot USA's] sales efforts.
>
> **REQUEST NO. 44**: Admit that you interfered with [Plot USA's] existing contractual relationships and prospective contractual relationships without justification and with the intent to harm [Plot USA].[36]

While the forty-second and forty-fourth admissions help Plot USA establish Hyakawa's knowledge of its customer relations and that he intended to disrupt them, the admissions alone aren't evidence that Plot USA had any valid and existing contracts or that Hyakawa's actions caused any third parties to breach those existing contracts. Instead RFA 42 suggests that Hyakawa's actions stopped customers from entering into new contracts with Plot USA and that he stole customers from the corporation—not that he disrupted a contract or sale that already existed. So I deny Plot USA's motion as to this claim because it has not met its burden to provide proof of each element of its claim.

### D. Intentional inference with prospective economic advantage

To establish a claim for intentional interference with a prospective business advantage, a plaintiff must prove:

> (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct.[37]

Plot USA argues that Hyakawa interfered with its prospective economic gains when he tricked customers who thought they were purchasing goods from Plot USA into paying Hyakawa for the

---

[36] ECF No. 65-1 at 10–11.

[37] *Leavitt v. Leisure Sports, Inc.*, 734 P.2d 1221, 1225 (Nev. 1987).

goods directly.  Unlike its claim for interference with existing contractual relations, Hyakawa's admissions support its claim for interference with a prospective economic advantage because they show that Hyakawa knew of potential customers that he could trick by setting up a fraudulent bank account.[38]  He also admits that he did so without a valid justification and in an attempt to harm Plot USA's sales.[39]  However, while Plot USA has provided evidence of the sales it lost from Hyakawa's actions, it hasn't distinguished those losses from its contract damages, which also assert that Hyakawa's interference breached his employment contract.  So I grant Plot USA's motion for interference with prospective economic advantage as to liability only.

### E. Plot USA has not established it's entitled to punitive damages.

Plot USA argues that Hyakawa's actions entitle it to recover $364,997.59 in compensatory damages and $1,094,992.77 in punitive damages.  "It is well established that in contracts cases, compensatory damages 'are awarded to make the aggrieved party whole and . . . should place the plaintiff in the position [it] would have been in had the contract not been breached.'"[40]  Plot USA argues that it spent $590.00 to regain data that Hayakawa deleted and destroyed, $4,211.00 to hire a forensic computer expert to attempt to recover the deleted and destroyed data, and $27,175.00 in total work hours expended by Plot USA employees to address Hyakawa's misconduct.  And it argues that Hyakawa's use of its trademark to usurp its sales is valued at $333,021.59.

---

[38] ECF No. 65-1 at 10.

[39] *Id.* at 10–11.

[40] *Road & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 382 (Nev. 2012) (quoting *Hornwood v. Smith's Food King No. 1*, 807 P.2d 208, 211 (Nev. 1991)).

But Plot USA's motion notes that some of its claims are duplicative of others and that it can only recover for the claims once. So it's unclear whether the $333,021.59 in fraudulent transactions is attributable to its breach-of-contract claim or its tort claims. So while Plot USA has shown Hyakawa is liable for breaching the contract, it hasn't demonstrated its amount of compensatory damages. And as Plot USA concedes,[41] "[p]unitive damages cannot be awarded" absent a "find[ing of] compensatory damages."[42] Because punitive damages are only recoverable for torts and depend on the underlying award, Plot USA must first demonstrate what compensatory damages its entitled to that underly its punitive damages calculation. Thus I deny its motion for summary judgment as to its punitive damages request as unsubstantiated.

## II.  Plot USA's motion for default judgment against Hidaka is premature.

I deny Plot USA's motion for default judgment against Hidaka as premature. The Ninth Circuit follows the time-honored *Frow* doctrine for considering whether to enter a default judgment against a single defendant in a multi-defendant case. The doctrine recognizes that, "where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants."[43] The Ninth Circuit extends this doctrine to cases in which the co-defendants are "similarly situated" and defense of the claims will hinge on the same legal theory because "it would be incongruous and unfair to allow a plaintiff to prevail against defaulting defendants on a legal theory rejected by a court with regard to an answering defendant in the

---

[41] ECF No. 65 at 7.

[42] *City of Reno v. Silver State Flying Serv., Inc.*, 438 P.2d 257, 264 (Nev. 1968).

[43] *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (citing *Frow v. De La Vega*, 82 U.S. 552 (1872)).

same action."⁴⁴ *Frow* unmistakably counsels against a default judgment against Hidaka while the suit against Hyakawa persists because Plot USA seeks relief from the defendants "jointly and severally."⁴⁵ So I deny Plot USA's motion for default judgment against Hidaka without prejudice to its refiling after the claims against Hyakawa are fully resolved.

**Conclusion**

IT IS THEREFORE ORDERED that Plot USA's motion for summary judgment **[ECF No. 65] is GRANTED in part**:

- I grant summary judgment against Hyakawa as to liability only for Plot USA's claims for breach of contract and intentional interference of prospective economic advantage.

- Plot USA's motion for summary judgment is denied in all other respects.

IT IS FURTHER ORDERED that Plot USA must **SHOW CAUSE by February 18, 2021**, why its claims for unjust enrichment and breach of implied covenant of good faith and fair dealing should not be dismissed in light of its success on the liability portion of its breach-of-contract claim.

IT IS FURTHER ORDERED that the parties must **file their proposed joint pretrial order by March 10, 2021**. If Plot USA intends on dismissing any of its claims, it should do so in that proposed order.

---

⁴⁴ *Geramendi v. Henin*, 683 F.3d 1069, 1082–83 (9th Cir. 2012) (quotation omitted).

⁴⁵ ECF No. 40 at ¶ 32.

IT IS FURTHER ORDERED that **Plot USA's motion for default judgment** against Yukari Hidaka **[ECF No. 68] is DENIED** without prejudice.

_____
U.S. District Judge Jennifer A. Dorsey
February 5, 2021